Case number three this morning is Our Country Home Enterprises v. Commissioner of Internal Revenue. Good morning, and may it please the court. My name is LeVar Taylor. I'm appearing on behalf of the appellant Our Country Home Enterprises. This case poses the interesting and important question, at least for tax lawyers, of whether the tax court below had the authority to decide the merits of the underlying penalty assessment that the IRS proposed and ultimately made against the appellant. Now there's a significant practical problem with both of the government's arguments. We're dealing now with two subsections of 6330, that is C2B and C4. Here's the common practical problem. Under the government's interpretation, the diligent taxpayer who comes in and says, oh, if the government comes to them and says, we're going to assess a $200,000 penalty against you. Do you want to do an administrative appeal before we send you a bill and start collection action? A diligent taxpayer is going to take advantage of that opportunity, but under the government's interpretation, that diligent taxpayer is penalized by the loss of tax court jurisdiction later on in the collection due process appeal. The dilatory taxpayer who says, I'm not going to raise the merits, I'm not going to make an administrative appeal when the government says we want to assess a $200,000 penalty, is rewarded by by virtue of the fact that they did not pursue any administrative opportunities to challenge a liability until the collection process started, until the government either filed a lien notice or sent a notice of intent to levy. And so that creates two problems. For the uninformed taxpayer, this is a big trap for the unwary. Taxpayers, when they get a notice from the IRS and they say $200,000, of course I want to appeal. Most taxpayers are unrepresented, are represented by, let's say, enrolled agents, accounts who are not particularly sophisticated in this area of the law. So they then go pursue their administrative appeal early on and lose the ability. For the knowledgeable taxpayer, who are represented by competent counsel, they are going to wait. It draws out the process. The taxpayer is going to go into the collection process when a prior administrative appeal before the collection process might solve the problem. So it creates this really strange, strange situation. Now the government says our interpretation encourages taxpayers to delay. And let me explain why that is not the case. And I'll do that by giving you a hypothetical conversation between a taxpayer who comes to me and says the government is proposing this $200,000 penalty. If, as we contend, in a prior administrative appeal before collection does not deprive the tax court of jurisdiction later on, what I'm going to tell my client is that, well, we can pursue the administrative appeal now, and you'll still have the ability to go to tax court later if that appeal is not successful. But if you want to forego that administrative appeal, you can go into the collection process. You can get a bill. You can fill out financial forms and pay me more money to do that and get a lien filed against you that's going to ruin your credit. What do you want to do? Do you want to take advantage of the administrative appeal? Well, I've been doing this in private practice for 27 years. I've never had a client say that they want to want to have a lien notice filed against them. That simply doesn't happen. I'll now turn to the individual subsections, and I'll start with C-4. C-4 is interesting because until a couple of years ago, since 1998 when the law was enacted, the government didn't apply to liability determinations. Maybe two years ago, they changed their mind and say, oh, well, we think this does apply to the liability determination. Now, C-4 is worded in a very particular manner. It uses the word issues, and it says if you raised an issue in a prior administrative proceeding, then you can't raise it later in a collection due process case. And the use of the word issues is crucial here because a liability, and very often does, consists of multiple issues. And so the government's interpretation, if correct, could end up with this bizarre situation where if you raised an issue in an earlier administrative proceeding involving a liability, and then later in the collection due process says, oh, I have another issue I can raise. Then you can litigate in the tax court only part of the issues that affect the liability. Again, that makes no sense whatsoever. Why not? Why doesn't that make sense? Because when you're going to litigate a liability, you want to litigate all the issues at once. But what if you don't? It's actually relieving the taxpayer of the race judicata effect of not raising an issue that you could have raised. The government is saying, we'll give you a second bite at the apple in case you forgot to raise something the first time around. But this is not race judicata. This is administrative. No, I know. I'm saying that the government could say, look, if you either raised it or could have raised it, you're precluded earlier, you're precluded from raising it later. The government is actually taking the pro-taxpayer position of, well, if you forgot to raise it the first time around, we'll hear you the second time around. What's wrong with that? Well, it leads to multiplicity of proceedings. Because if you go and pursue an administrative appeal on issue one, and the government says, sorry, we rule against you. And later on, in a collection due process appeal, you say, I want to raise issues one and two. Both of them affect the liability. And the IRS and the tax court says, sorry, we can only consider issue two. Well, now, if we want to litigate issue two, we can't litigate it in the tax court proceeding. We have to litigate issue one in the tax court, and then go file a claim, pay it, and file a claim. And if we lose that issue, or if we win that issue and there's still liability owed, that issue only affects part of the liability, then we have to go pay the tax, and file a claim for refund, and file a second refund suit in district court. It leads to multiplicity of litigation. So the answer to your question specifically is, the reason we don't, the court should not go there, is because we want to have one lawsuit, one in tax court, where we litigate the liability, not this weird situation where I can only litigate one issue in the tax court, and then I have to go litigate a second issue in the district court. So is it your position that the word issue in subsection C4A Romanet I, it does not include liability issues? That is correct. It only deals with collection issues. So for example. And how do you get that from the text? From the text? Of the statute. Because issues, because 6332C2B, the other section, deals with liability. You get that from the text. So issues deals with things like, I can't pay everything, I can't pay it in full now, and I have $700 a month of disposable income. Do you have a copy of the statute there? The whole 6330C? Because I'm going to propose a reading, and I'd love for you to tell me why I'm wrong. Let's put aside the fact that the word issue is not modified in C4A Romanet I. It just says issue. It doesn't say non-liability issues. It says issue. Let's put that aside. So what does issue mean? If you look at subsection C3B, it also refers to the word issues. It says the issues raised in paragraph 2. Right? You got that? Yes. Okay. And among the issues raised in paragraph 2, if you look at 2B, it's the underlying liability. So we have the word issue in subparagraph 4. The same word issue is used in subparagraph 3 that refers to paragraph 2, and paragraph 2 refers to liability. So when you kind of link all that up, isn't that further confirmation that the word issues in subparagraph 4 includes not just non-liability issues but also liability issues? No. First, for the reason I articulated before it, because that construction rewards the dilatory taxpayer and penalizes the diligent taxpayer for raising the liability early on. Second, when you look at the exception to this provision, it deals with changed circumstances. That is D2, if you look at the statute. D2B, it says after the person has exhausted all administrative remedies, a change in circumstances. That's the exception. Now, a change in circumstances in the future does not in any way affect the determination of liability. It can only affect collection. When somebody loses a job, or their income goes up or go down, or they inherit an asset. So the exception to this statute, this C4, is change in circumstances. Change in circumstances has no effect whatsoever on a liability because a liability is fixed once the tax year is closed. Now, I'd like to move on to, unless the court has more questions about C4, there's another reason why C4 should not apply. It talks about any administrative proceeding. An audit is an administrative proceeding. So when the IRS comes along and says, we're going to audit you and we think that you owe a million dollars, and you say during the course of the audit, not an administrative appeal later, you say, no, I don't, and you fight, and you argue with the agent. That is an administrative proceeding. And so the government didn't have to say it applies to an audit here because there was an administrative appeal, and they're just saying, well, it was an administrative appeal, so it applies. But an administrative proceeding includes the original audit. And so if you say this anytime the government comes along and says you owe something, you can't later challenge it in collection due process, and so it reads the exception out of this. It reads that it eliminates your ability to challenge the liability under C2B. Now, if you focus on C2B, the issue is what is a prior opportunity? We say it's a prior judicial opportunity. The government has this funny interpretation. They say, well, it's a prior administrative opportunity, but it's not every opportunity. It's just the ones we think should apply, and we can say that just appeals is covered, and we can ignore the original opportunity to submit an offer in compromise based on doubtless liability. One key point, and then I'll reserve the rest of my time for rebuttal, is that the government does not dispute that every single taxpayer who has a disputable liability that is not res judicata can come in any time after the liability is assessed and collection starts, and they can go submit an offer in compromise and challenge that liability administratively. That can occur in every single case, and that's why we say if it's an administrative liability that disqualifies you from raising the liability later, the exception swallows the rule. So with that, I'll reserve the rest of my time for rebuttal. Thank you, counsel. Ms. Rubin? May it please the court, my name is Jennifer Rubin, and I represent the commissioner in this case, and first I'd like to apologize. I have a terrible cold, so if you have any trouble understanding me, please just let me know, I'll repeat anything. We're not concerned about understanding you, just don't give us a cold. I'm way back here, I'm good. Like my opponent, I'd like to start with 6330C4, and specifically with Judge Feinerman's structural analysis of the statute, which we agree with completely. The interpretation of the word issues should be used consistently throughout this provision. The issues at the hearing include the ones in 6330C2A, which are collection issues, and C2B, which are liability issues. So C4A applies to those issues, which would seem to include 6330C2B, underlying tax liability issues. And you notice that much of what they're arguing here in terms of trying to challenge our analysis of 6330C4 are policy arguments. But those policy arguments cannot justify going against the plain language of the statute. And this is a plain language analysis. Now they suggest that there may be some ambiguity as to what an administrative proceeding is, as to whether it should count just appeals hearings or an audit. And I think that's really what the Hampton Software case that was cited in the reply brief is talking about. They're saying, hey, we think you should not try to use C4A to get around the limitations put by the regulation as to 6330C2B. So the same sort of hearings that would not be included in 6330C2B would not be included with C4A. Now, and we're fine with that analysis, but in all events, this case doesn't present a problematic question as to what is a prior administrative proceeding, because this was a prior administrative appeals hearing. And so you're not dealt... being faced with a difficult question as to, well, should an examinations proceeding count or anything along those lines. Now, as far as the questions as to whether, oh, this is a problem because you could only, you know, go with a particular issue or this might lead to a multiplicity of litigation, keep in mind that this is basically a form of issue preclusion that is being... it's specific to collections due process hearings that Congress has put in. And it incorporated into it the same sort of limitations that you find in issue preclusion all over the place was only issues that were previously raised and considered, and that you had to meaningfully participate in. And it also brings in the same change circumstances limitation that you find in the Commissioner v. Sunning case, which we cited in talking about collateral estoppel. Now, what Sunning says is this. If you have a case that race judicata wouldn't apply to in the tax context, such as for a different tax year, you could still get issue preclusion as long as there were not changed circumstances between the original ruling and the case you have right now. They were very clear on that, and I think that's generally true in collateral estoppel, but specifically with the tax area. And they give an example where if the law or the facts have changed. Now, that's significant because we cite two cases in our brief where 6330C4A was applied to liability issues. It's the Schaeffer case and the Ruggiero case. And in each of those cases, the liability issue at hand in the current CDP proceeding, collections due process proceeding, was raised in a prior tax year's proceeding. And the court said, oh, under 6330C4A, you can't raise it. So, that's where that changed circumstances exception really comes in, and we, of course, agree with that. Not only is it statutorily in the statute, but it again flows directly from the commissioner versus subject. What was raised in the prior proceeding? Was it liability only, or was it liability and the amount of the penalty? It was both. It was basically challenged, because if you look at it was both the existence of liability and the amount. They argued that this was not a listed transaction, and they also argued that it was calculated incorrectly. It's a little bit less clear in the Keller protest hearing what precisely was raised than it was in our country. I'm sorry, I misspoke. If you look at the appeals case memorandum here that was issued, it's very clear that that both were addressed. And that's the Palminteri appeal? I believe so. So that was the first appeal. So what could our country have done after Palminteri upheld the penalty in the first appeal hearing? What recourse did our country home have? It could have paid the tax and gone for a refund claim, and if that claim was denied, then they could have filed a refund lawsuit in district court. Second, if the levy didn't actually work to collect the money, then the government would have had to have done an action to reduce the assessment to judgment, and at that time they could have raised liability in the district court as part of that government action. It just depends on exactly how the levy collection action worked here. There are times when you put a levy on an account and it doesn't actually collect the money. So Palminteri's decision was subject you're saying that it was subject to judicial review one way or the other. That's right. That's right. It may not have been the judicial review that our country home says they should have been able to get, but that's but it is a judicial review that has been in place for decades, which kind of goes, flows directly into our 6330 CTB analysis, if I may turn to that. If you could, just for one moment, address counsel's regarding the exception to C4 that is contained in D2B. Okay, that is the changed circumstances and that could apply to liability cases if, for example, the liability issue was addressed in a prior tax year. So that's going to be, that's the Ruggiero and the Schaefer cases. Those were prior tax years, so they challenged a particular liability issue in a prior tax year, and they're trying to raise it again, which if you think about it, that's really why issue preclusion is so important here. Otherwise, you could have a taxpayer just, every year after year, oh, I know that I challenged that liability last year in my collection of due process hearing. You have to address it again now because, you know, it never went to, I never actually took it to the tax court, and this is a different tax year, so race judicata doesn't apply, so you have to address it. And what C4A makes it very clear is no, you can't do that. You can't do that. You get one bite at the apple, either in appeals or a judicial proceeding, and that's it under C4A. But the tax court did not rely on C4A, did it? It did not. Was the argument made by the commissioner to the tax court regarding C4A? It was made, yes, Your Honor. It was made in the supplement to the motion for summary judgment, and the Our Country Home had the opportunity to respond in its supplement to its objection to the motion for summary judgment. So under Peretz this is an issue that you can rule on. Typically, in the liability cases, 6330 C2B is an easier law to apply under the interpretation of the regulations. Often, litigants in the tax court have only relied on 6330 C2B because you don't have to show that the issue was raised, you don't have to show that it was considered, and you don't have to show meaningful participation. All you have to show is that the opportunity to dispute was provided. And so it's not terribly surprising to me that the tax court might have relied only on 6330 C2B, but that doesn't mean 6330 C4A does not apply. Turning now to 6330 C2B, if there's no further questions on C4A. Everyone agrees. The tax court agreed in Lewis. Our Country Home agreed in its opening brief. We agreed in our appellate's brief. I think it doesn't seem like it's disputable that the phrase opportunity to dispute could include administrative hearings. It could include an administrative opportunity to dispute. And there's really no plain language basis to say that it doesn't. You know, there's a lot of contortions being done in the appellate's brief, particularly with the no-satire associates argument. But given that this is an ambiguous phrase, we submit that once that it is reasonable for the commissioner and its regulation to have determined that some appeals hearings in fact do count as a prior opportunity to dispute. Now the complaint that's being raised, and you certainly heard it in the opening argument here, is that some appeals hearings are not included, and some non-appeals hearings are not included. We think that these were reasonable distinctions that were made by the commissioner. There's no examinations and appeals are different. The appeals hearings are done before an independent person who's not involved in assessing the tax in the first place. Deficiency proceedings have traditionally been very different from, been treated differently from other cases and in particular under section 62.13 of the code, the issuance of a deficiency notice is very important. In 63.30 CTB, the textual language indicates that it's important that there was a deficiency notice received. We say that this regulation was very consistent with that, but the other thing that's important here is we also think that this regulation is consistent with the statute as a whole. And you look particularly again at 63.30 C4A. There's no reason why Congress would have felt that an administrative proceeding was sufficient for purposes of C4A, but was somehow inadequate for purposes of C2B. Especially given the other provisions of the Reform Act that make clear that Congress at that time really viewed appeals as an excellent opportunity for taxpayers to dispute their liability and try to get them resolved sooner rather than later. And the final thing I would like to point out is something that the tax court really focused on in the Lewis decision that we focused on in our brief, which is this. What is happening here is that our country home is attempting to use very big language to achieve a very significant change in tax law, which is basically that the full payment rule that requires you to pay your taxes and then go do a refund action would just be eviscerate. At this point, it's very rare outside of the deficiency context that you have the opportunity to do a prepayment judicial challenge to your taxes. And you shouldn't have to use contortions such as their docitor-associate argument, which is improper under Graham County and all of it, to achieve such a major change. That's really the point of our elephant and mousehole argument, which is that it's not that this was not an important law. It's that these are vague terms. And here in addition to the fact that Chevron does apply and under Chevron you should be giving deference to this reasonable interpretation of Section 6330 CTV. But in addition it treats this as continuing this very important regulatory scheme that Congress has not said that it intends to abandon. If Congress wants to abandon that regulatory scheme that's been in place for so long, you would expect it to do so in very clear terms. And it simply did not do so. Are there any further questions that I can answer on 6330 CTV? If you might address the distinction that the regulation draws between appeals hearings that precede a notice of deficiency and appeals hearings that follow a notice of deficiency. What's the basis for that distinction? I think it really follows from both the text of 6330 CTV, which treats the receipt of the deficiency notice as significant and it also follows from the particular place the deficiency notice really plays in the deficiency proceedings in general. Under 6213 A, that's the provision that deals with deficiency proceedings. The receipt of a deficiency notice is a jurisdictionally important action for purposes of tax court jurisdiction. So it's an important event. And this treats that event as significant. It also creates a bright line. You could potentially have a situation where somebody says, well I thought I could challenge liability because I never received a deficiency notice in part, this deficiency that you've asserted against me. And you say, oh but you had a prior opportunity to dispute before the deficiency notice was issued that you never received. So here it also has the plus of creating a bright line. In all events we tend to think it's a reasonable distinction. And the fact that the taxpayer here believes that there's some that it's an improper distinction is just their opinion. We think that it is reasonable in light of its place in the context of tax procedure. Ultimately the Commissioner's interpretation in the regulation which deserves deference in our city of Arlington it maintains the focus on collection it treats collections due process hearings really as a stop gap for considering liability issues that for some reason just never ever got considered. Maybe it was a self-assessed maybe it was a self-assessed tax that you didn't pay. That's a situation where you might not get an opportunity. And finally we would just note that an offers and compromises and audit reconsideration which you've mentioned several times you only actually get the opportunity for appeals hearings if you make those requests if they're accepted as procedurally adequate and if they are rejected having already been accepted as procedurally adequate. So no it is not the case that everybody gets an offer of appeals hearing. For all the reasons stated in our brief we ask you to affirm. Thank you counsel. Mr. Taylor. Thank you. What the court did not hear government counsel say is that under C-4 an audit is not an administrative proceeding. They didn't say that. It is an administrative proceeding and if you would say if you look at C-4 and say that an audit is an administrative proceeding that prohibits you from challenging the merits that's where the IRS asserts you owe additional liability. They audit and say you owe a penalty. They audit and say you owe tax. And so if that is an administrative opportunity which it is every single additional where they're coming after you and saying you owe liability you're precluded from raising the merits. That simply does not make sense. So you're saying that a proceeding you're saying that a proceeding encompasses an audit. Yes it's an administrative proceeding. Absolutely. It's an interaction with an agency where they're they don't know it. That's what an audit is. That's why we have liabilities because they're administrative proceeding and saying you owe money and my client saying no I don't. Isn't a better read of the word proceeding something that takes place in front of some sort of arbiter like an appeals officer or a tax court judge? I don't think that's a proper reading of the statute. I don't. I'd like to briefly talk about how they say there should be deference to the regulation. If C-4 applies then the regulation is wrong. I don't see how when the government is saying that the regulation deserves deference and they're arguing over here that C-4 applies they're saying our regulation is wrong. That distinction between pre-appeals and income taxes and pre-assessment appeals and other types that's a distinction that simply doesn't apply if C-4 applies. If the court were to say that C-2b gives the government the ability to change the regulations and this regulation in its current form is changed from the Lewis case. This is not precisely the same. If they can change the tax court's authority to decide liabilities by changing their regulation that's an encroachment on the courts, on the judicial. The cases are very clear that the executive branch cannot by regulation limit the court's ability to decide issues. Now whether it's jurisdiction or you're calling something else I'm not sure with the Supreme Court cases dealing with jurisdiction that jurisdiction means jurisdiction but let's use a word that we can all agree on. The authority of the tax court to decide a liability. And what they're saying is that we can change the regulations at any time. The statute talks about a prior opportunity. It doesn't say only opportunities by red headed tax payers or only opportunities at the first level or the second level. It deals with all opportunities. There is no basis in the statute for drawing the distinctions that the regulation draws. There's no basis for drawing any type of distinctions and there are five if I may finish the thought. The no cetera associes. There were a half a dozen other types of proceedings where the tax payer gets a notice from the IRS that allows them to go other than a notice of deficiency that allows them to go to tax court. And that's where the word is known by the company it keeps. It says if you received a notice of deficiency or otherwise have an opportunity. And the otherwise in our view means you received one of these other half a dozen notices other than a notice of deficiency that allows you to go to tax court. And so that's why we believe in addition to the fact that if it's an administrative opportunity the exception swallows the rule we believe that the tax court below got it wrong. If there's no further questions, thank you. Thank you counsel. The case will be taken under advisement. We move for the